## O'Leary Estate.

Argued September 26, 1944. Before KELLER, P. J., BALDRIGE, RHODES, HIRT, RENO and JAMES, JJ.

*Charles S. Shotz,* for appellant.

*Lloyd J. Schumacker,* for appellee.

OPINION BY RENO, J., October 27, 1944:

Wetzel & Son, Inc., undertakers, filed exceptions to the adjudication of the account of the guardian of the estate of Doris O'Leary, a minor, on the ground that the funeral expenses of the minor's deceased indigent father should have been awarded to the exceptant out

of the fund in the hands of the guardian. The exceptions were dismissed and this appeal followed.

The facts appear from an agreed statement of the case filed under our Rule 56. Charles O'Leary, the minor's father, died intestate without real or personal property, leaving to survive him two adult married sons, a minor son, a minor daughter, and Doris O'Leary, who was nineteen years of age. Immediately after his death, Doris O'Leary and an adult sister-in-law went to appellant's undertaking establishment and arranged for the deceased's burial at a cost of $205. Appellant performed the funeral services after having secured the assurance of Doris O'Leary's guardian that the bill would be paid out of her estate. None of the decedent's other children has assets with which the undertaker's charges can be paid, but Doris O'Leary's guardian has a fund which at the filing of its account amounted to $2,653.55, representing the balance of a judgment recovered for personal injuries suffered by her several years before. The minor is employed as a waitress earning $21 a week and she desires that the charges be paid out of her estate. It is agreed by all parties concerned that the bill is a very modest one under the circumstances, and the auditing judge was of the opinion that the minor's earnings and her estate were ample for her support and that payment of the claim could be authorized without endangering her future welfare, but the claim was disallowed in deference to what was thought to be binding precedent established in prior adjudications of the Orphans' Court of Philadelphia County.

A conflict of opinion exists in the decisions of our lower courts on the question whether the funeral expenses of a deceased indigent parent may be paid by the estate of a minor child of the decedent. Some cases adhere to the rule that under no circumstances may the minor's estate be liable for such expenditures (e. g., *Hunter's Estate*, 8 D. & C. 533; *Pietrazko's Estate*, 11

D. & C. 521; *Heller's Estate*, 22 D. & C. 649; *Mizishko's Estate*, 28 D. & C. 362; *Fantini's Estate*, 44 D. & C. 444, reversed on other grounds, 150 Pa. Superior Ct. 495, 28 A. 2d 817); while the doctrine of other decisions is that under compelling circumstances a reasonable allowance for burial expenses will be decreed (e. g., *Estate of Schurr*, 13 Phila. 353; *Van Ness Estate*, 66 Pitts. L. J. 814; *Danko's Estate*, 13 D. & C. 742; *Knaut's Estate*, 28 Berks Co. L. J. 224; *Shelley's Estate*, 21 D. & C. 168; *Lamb's Estate*, 30 D. & C. 631; *Dugan's Estate*, 42 D. & C. 431). No statute governs the situation and no appellate decision has dealt squarely with the problem here presented, although two cases have frequently been cited by analogy in the lower court opinions to which reference has been made. In *Bair v. Robinson*, 108 Pa. 247, it was decided that funeral expenses for the mother of an adult married woman living in her daughter's household were necessary for the maintenance of the family of the daughter and her husband within the meaning of Married Women's Act of April 11, 1848, P. L. 536, §8, 48 PS §116, and that the daughter could, therefore, by contract, bind her separate estate for the payment of those expenses in the event of her husband's insolvency. *Sibilia's Estate*, 82 Pa. Superior Ct. 67, affirmed 279 Pa. 459, 124 A. 137, stands for the proposition that one who pays the expenses of the last illness of a decedent at the request of deceased and his wife cannot recover a pro rata contribution from the estate of decedent's minor child who did not request claimant to make the expenditures and who contested their allowance out of his estate, where the minor's estate arose from the settlement of a statutory cause of action conferred by Act of Congress directly upon the minor for his parent's wrongful death. Neither of these cases reach the point now in issue and in the absence of statutory direction or controlling judicial precedent the case must be decided on principle.

The common law placed no liability, arising inde-

pendent of intention out of the relationship of parent and child, upon a child, whether infant or adult, for the expenses of interment of a deceased parent. It is plain, therefore, that the mere circumstance that a minor child has an estate is not sufficient to burden his property with an obligation that does not otherwise exist. But it is equally clear that an adult child, although not bound so to do, may voluntarily pay the charges incurred for interring a departed parent, an act which may be calculated as well to preserve his good standing in the community as to represent a final expression of reverence and affection toward the deceased. May not the orphans' court authorize a minor child, activated by the same desires, to permit, in some circumstances, a like disposition of a portion of his assets?

The control over a minor's estate is entrusted to a guardian primarily to protect a minor from his own indiscretion and from the domination or importunities of those about him. It is contemplated that his estate, wisely conserved, will provide him during his minority with those things generally understood as being reasonably compatible with his station in life, and that the surplus not needed for current expenditures will be secured to him as a competence upon his arriving at age. The law's solicitude for the welfare of a minor is carried to an extreme, however, where it is permitted to reach a contrary result, against the minor's wishes in a situation where he manifestly does not require its protection. It would be unconscionable to decree that in all cases a minor must face the alternative of seeing his deceased indigent parent's body interred in Potter's Field or turned over to public authorities for medical research. It cannot be said that this result is for the best interests of the minor especially in view of the contempt and ill will that might be heaped upon him by members of his community who know of his estate and do not understand his legal predicament. The

minor should not be prevented from responding to the call of common decency (*Bair v. Robinson,* supra, p. 248) when his estate and his economic future are not thereby jeopardized. We think that in situations such as this one, where a minor's estate after payment of a reasonable funeral bill will be sufficient, together with his expected earnings, to maintain him comfortably until his majority in his accustomed mode of living; where there is no other source from which a funeral bill can be recovered; and where the minor, having reached an age at which he can exercise a sound discretion on a matter of such importance to him, assents to the payment of the bill from his estate, the orphans' court may order the payment of a moderate amount to the undertaker.

Decree reversed; the full amount of the claim is allowed; costs to be paid by the estate.